UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRIET KELLUM, and
KELLY McGUIRE,

        Plaintiffs,

v.

SAVASENIORCARE, LLC, a Delaware
limited liability company, and SAVA SENIOR
CARE BEVERLY HILLS OPERATING
COMPANY, LLC, a Delaware limited liability
company, and CAMBRIDGE SOUTH, INC.,
a Michigan corporation, jointly and severally,

        Defendants.

Case No. 12-CV-13056
Honorable Denise Page Hood

_____/

**OPINION AND ORDER GRANTING SSC BEVERLY HILLS OPERATING COMPANY'S MOTION TO DISMISS AND COMPEL ARBITRATION AND GRANTING SAVASENIORCARE, LLC AND CAMBRIDGE SOUTH, INC.'S MOTION TO DISMISS**

Plaintiffs Harriett Kellum and Kelly McGuire filed the present action in Oakland County Circuit Court, alleging a violation of the Michigan Whistleblower's Protection Act and Public Policy. Defendants removed the action to this Court. Now before the Court is SSC Beverly Hills Operating Company's Motion to Dismiss and Compel Arbitration, filed July 11, 2012, and SavaSeniorCare, LLC and Cambridge South, Inc.'s Motion to Dismiss and, in the Alternative, to Compel Arbitration, filed July 11, 2012. For the reasons stated below, SSC Beverly Hills' Motion to Dismiss and Compel Arbitration and SavaSeniorCare and Cambrige South's Motion to Dismiss are granted.

**I.**

Plaintiffs were employees of SSC Beverly Hills Operating Company LLC's[1] Cambridge South Healthcare Center in Beverly Hills, Michigan. Kellum began her employment on October 30, 2008. McGuire began her employment on July 27, 2009. On November 3, 2008, Kellum signed an Employment Dispute Resolution (EDR) Program Agreement. Kellum alleges that she was already hired and working for three days before she was presented with the EDR Program Agreement. McGuire signed the same EDR Program Agreement on July 7, 2009. McGuire claims that she was not educated on the EDR procedures or given the rules of the EDR Program.

> The EDR Program Agreement provided in relevant part:
>
> I understand and agree that the last step of the EDR Program is final and binding arbitration by a neutral arbitrator. I understand and agree that this mutual agreement to use the EDR Program and to arbitrate claims means that the Company and I are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial. I further understand and agree that if I file a lawsuit regarding a dispute arising out of or relating to my application for employment, my employment or the termination of my employment, the Company may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use the EDR Program instead. . . .
>
> I understand that the EDR Program affects my legal rights. I also understand that I may obtain a copy of the EDR Program booklet and seek legal advice before signing this Agreement.
>
> I certify that I have read this Agreement, I have had an opportunity to ask questions regarding its content, I understand this Agreement, I believe it to be fair, and I voluntarily enter into this Agreement.

[Docket No. 4, PG ID 82, 84]. Plaintiffs also signed an Employment Dispute Resolution Program Acknowledgment, which provided in relevant part:

> I acknowledge that I have received my copy of the Employment Dispute Resolution (EDR) Program booklet. I realize it is my responsibility to familiarize myself with it's [sic] contents and have had the opportunity to ask questions about it's [sic]

---

[1] SSC Beverly Hills Operating Company LLC was incorrectly named as SavaSeniorCare Beverly Hills Operating Company LLC in the Complaint.

  contents. If I have further questions, I will ask my Supervisor.

[Docket No. 4. PG ID 83, 85].

  Plaintiffs made numerous complaints against Defendants stemming from certain health violations and hazardous work conditions. As a result of these complaints, Plaintiffs allege that their employment was terminated, Kellum on March 23, 2012 and McGuire on May 23, 2012. This litigation followed.

## II.

  Federal Rule of Civil Procedure 12(b)(2) allows the Court to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff has the burden of establishing whether the Court has jurisdiction over the defendants. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). When presented with a motion to dismiss for lack of personal jurisdiction, the Court may, in its discretion, choose between three options. First, it may conduct an evidentiary hearing to resolve any factual issues. *McCluskey v. Belford High Sch.*, 795 F.Supp.2d 608, 615 (E.D. Mich. 2010). Second, it may proceed to discovery. *Id.* The Court may conduct an evidentiary hearing or allow discovery if "the written submissions raise disputed issues of fact or seem to require determinations of credibility." *Id.* (quoting *Serras v. First Tenn. Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989). Finally, the Court may elect to decide the issue based on the pleadings and affidavits alone. *Id.*

  When the Court decides against conducting an evidentiary hearing, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Lifestyle Lift Holding Co., Inc. v. Prendiville*, 768 F.Supp.2d 929, 932 (E. D. Mich. 2011). "In this circumstance, the plaintiff must make a prima facie showing of jurisdiction; the court does not consider the controverting assertions

of the party moving for dismissal." *Id.* In a diversity case, the plaintiff has established a prima facie case when he or she shows that the federal court's exercise of personal jurisdiction over the defendants is authorized by both the law of the forum state and the Due Process Clause of the Fourteenth Amendment. *Neogen Corp.*, 282 F.3d at 888.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.     The Court Lacks Personal Jurisdiction Over SavaSeniorCare LLC

Defendant SavaSeniorCare LLC argues that the Court lacks personal jurisdiction. "A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp.*, 282 F.3d at 888. Pursuant to Michigan law, the Court has general jurisdiction over a nonresident corporation when it is (1) incorporated under the laws of Michigan, (2) consents to be sued, or (3) carries on "a continuous and systematic part of its general business" in Michigan. MICH. COMP. LAWS § 600.711

SavaSeniorCare does not satisfy the requirements of general personal jurisdiction. It was not incorporated in Michigan, it has not consented to be sued in Michigan, nor has it carried on a continuous and systematic part of its business in Michigan. Given that the Court has no evidence before it that would raise a factual issue as to general jurisdiction, the Court finds that it does not have general personal jurisdiction over SavaSeniorCare.

The exercise of specific personal jurisdiction over a nonresident corporation is appropriate in connection with the following acts:

> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS § 600.715. However, "[w]hen a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction violates constitutional due process." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005). Section 600.715 extends to the limits permitted by the due process clause and, therefore, the Court is only required to determine whether jurisdiction is appropriate under the Due Process Clause. *Lifestyle Lift Holding, Inc. v. Prendiville*, 768 F. Supp. 2d 929, 933 (E.D. Mich. 2011).

The Sixth Circuit employs a three-part test to determine whether the exercise of personal jurisdiction would be consistent with the Due Process Clause: 1) the defendant has purposefully availed itself of the privilege of acting in the forum state or causing a consequence to occur there;

2) the cause of action arises out of the defendant's activities in the forum state; and 3) whether the exercise of personal jurisdiction is reasonable based on the defendant's connection to the forum state. *S. Mach. Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). There is an inference that the exercise of jurisdiction is reasonable when the first two elements are satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

Likewise, SavaSeniorCare does not meet the requirements for specific personal jurisdiction. Plaintiffs allege in their Complaint that SavaSeniorCare "is generally engaged in the business of providing care to senior citizens, is an employer within the meaning of Plaintiffs' claims, and operates a facility in Beverly Hills, Oakland County, Michigan." At oral argument, Plaintiffs eluded to being in possession of evidence showing that SavaSeniorCare operated a facility in Michigan. They did not and have not provided this piece of information. Plaintiffs later admitted that the correct employer for this matter is SSC Beverly Hills. SavaSeniorCare provides the affidavit of SSC Beverly Hills' Corporate Secretary. She notes that SavaSeniorCare is a Delaware company with a principal place of business in Georgia. She further notes that SavaSeniorCare does not conduct business of any kind in Michigan. It also provides public records showing that SavaSeniorCare did not operate the facility in Beverly Hills, Michigan. Again, Plaintiffs have not raised a factual issue as to whether SavaSeniorCare is subject to specific personal jurisdiction. SavaSeniorCare is dismissed from the Complaint for want of personal jurisdiction.

### B.     **Plaintiffs Were Not Employed by Cambridge South**

Defendant Cambridge South contends that Plaintiffs have failed to state a claim against it because it never employed Plaintiffs. It asserts that the facility that employed Plaintiffs was operated by SSC Beverly Hills Operating Company. Public records attached to Defendants' motion

to dismiss indicate that Cambridge South did not manage the facility at issue during Plaintiffs' employment. Cambridge South stopped operating the facility in 2006 before the Plaintiffs were hired. Plaintiffs claim that Defendants unlawfully terminated their employment in retaliation for engaging in protected activity. Cambridge South could not have engaged in these wrong acts if it never employed Plaintiffs. Plaintiffs do not contest that Cambridge South was not their employer. In fact, at oral argument, Plaintiff admitted that the appropriate employer for this action was SSC Beverly Hills. Cambridge South is dismissed from this action because Plaintiffs have failed to state a claim against it.

      **C.    Defendants are Entitled to Enforce the Arbitration Agreement**

SSC Beverly Hills argues that Plaintiffs must be compelled to arbitrate their dispute pursuant to the EDR Program Agreement. There is a "strong federal policy in favor of arbitration." *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000). Likewise, Michigan also "has expressed a strong public policy favoring private voluntary arbitration, and [Michigan] courts have historically enforced agreements to arbitrate disputes." *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 127–28, 596 N.W.2d 208 (1999); *see also* MICH. COMP. LAWS § 600.5001 *et seq.* In determining whether the parties are required to arbitrate their dispute, the Court must determine whether there is a valid arbitration agreement and whether the parties' dispute falls within the scope of the agreement to arbitration. *Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting *Landis v. Pinnacle Eye Care, LLC,* 537 F.3d 559, 561 (6th Cir.2008)).

Absent an attack on the validity of the arbitration agreement, "as a threshold matter, [the Court must determine] whether an issue is within the scope of an arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). "[A]ny ambiguities in the contract or doubts

as to the parties' intentions should be resolved in favor of arbitration." *Mazera,* 565 F.3d at 1001. Although there is a strong policy in favor of arbitration, it is not absolute. *Albert M. Higley Company v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006). Arbitration is "a matter of consent, not coercion." *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989)).

Plaintiffs contend that they did not knowingly and voluntarily waive their right to sue. They argue that they were not given the rules governing the grievance procedure or sufficient time to consider the EDR Program Agreement before signing. The Sixth Circuit has articulated the following standard when determining whether an employee knowingly and voluntarily waived the right to sue in court: (1) Plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had the opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances. *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003)).

The Court finds that there was a knowing and voluntary waiver. The EDR Program Agreement's meaning is clear: by signing Plaintiffs agreed to forego the right to a jury trial. The unambiguous EDR Program Agreement is scarcely a page long. Plaintiffs were advised that they could consult an attorney before signing. [Docket No. 3, Pg ID 56, 58]. Ms. McGuire admits that she received the Agreement, Acknowledgment, and EDR Program booklet, but does not allege that she read the EDR booklet. Ms. Kellum was told that there were no EDR Program booklets available at that time but was given papers, which she admits were related to the EDR process. She also does not indicate that she attempted to read the papers or ask for a EDR Program booklet at a

8

later date. Plaintiffs have not alleged that they did not understand the EDR Program Agreement, that they needed more time to consider it, or that they would have consulted an attorney if given more time. Furthermore, Plaintiffs signed a second document indicating that they understood the EDR Program Agreement and had an opportunity to ask questions. The document directed Plaintiffs to talk to their Supervisor if they had any other questions. During the approximately three years that Plaintiffs were employed with SSC Beverly Hills, they do not allege that they asked any questions regarding the EDR Program procedures.

Plaintiffs are nurses. The Court can safely assume that they possess a level of education that would allow them to understand and comprehend the short one page EDR Program Agreement. Plaintiffs were hired by SSC Beverly Hills. "Defendant[s] gave due consideration to Plaintiff[s] for agreeing to arbitration—a job." *Moore v. Ferrellgas*, 533 F.Supp.2d 740, 749 (W.D. Mich. 2008). The Court finds that under the totality of the circumstances, the Plaintiffs' waiver of the right to sue was both knowing and voluntary. *See Seawright*, 507 F.3d at 974 (finding employee had knowingly and voluntarily waived right to sue when she was "an educated, managerial employee who was capable of understanding the EDR Program's provisions . . . [and] had ample time . . . [to] consult[] with an attorney or decide[] she did not wish to waive her rights."); *Moore*, 533 F.Supp.2d at 749 (finding waiver when the employee was given a job as due consideration for the waiver and did not request extra time to review the waiver, indicate that he did not understand it, or allege that he would have consulted an attorney if given an opportunity.); *Morrison*, 317 F.3d at 668 (finding waiver when employee was "a highly educated managerial employee who was capable of understanding the terms of the agreement[,]" the waiver was plain, and the employee did not allege that she could not understand it.). Plaintiffs must submit their dispute to arbitration.

### D.     Motion to Strike Supplemental Brief

At oral argument and not in their response, Plaintiffs argued for the first time that their dispute was a matter of common law arbitration and not statutory arbitration and, therefore, Plaintiffs could revoke the EDR Agreement. The Court typically does not consider arguments raised for the first time during oral argument. Plaintiffs "could have and should have made the argument . . . in [their] opposition brief (or by obtaining leave of court to file a sur-reply brief that raised the issue.)" *Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 948–49 (W.D. Mich. 2009). In response to the new argument, Defendants filed a supplemental brief. Plaintiffs now ask the Court to strike Defendants' supplemental brief because it does not comply with Local Rule 7.1, which provides for a response and a reply to a dispositive motion. E.D. Mich. L.R. 7.1(e)(1). Given that the Court deems Plaintiffs' newly raised argument waived, the Court sees no need to consider Defendants' supplemental brief.

### III.

IT IS ORDERED that Defendants SavaSeniorCare, LLC and Cambridge South, Inc.'s Motion to Dismiss [Docket No. 4, filed July 11, 2012] is GRANTED. The Court deems Defendants alternative motion to compel arbitration moot.

IT IS FURTHER ORDERED that Defendant SSC Beverly Hills Operating Company's Motion to Compel Arbitration [Docket No. 3, filed July 11, 2012] is GRANTED. Plaintiffs must submit their dispute to arbitration pursuant to the EDR Program Agreement.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1–16, for the purpose of confirming, vacating or correcting any arbitration award and enforcing the parties' arbitration agreement. After an award has been issued,

any party who seeks to confirm, vacate or correct any arbitration award may file a notice with the Court to reopen the case.

    IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike [Docket No. 15, filed October 16, 2012] is GRANTED.

    IT IS SO ORDERED.


                        S/Denise Page Hood
                        Denise Page Hood
                        United States District Judge

Dated: March 29, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2013, by electronic and/or ordinary mail.

                        S/LaShawn R. Saulsberry
                        Case Manager